## BROCK ET AL. *v.* STATE OF INDIANA.

[No. 24,030. Filed October 6, 1922.]

CONSPIRACY.—*Conspiracy to Steal.*—*Evidence.*—*Sufficiency.*—*Intent.*—In a prosecution for having feloniously combined, conspired and confederated together with intent to steal, evidence *held* sufficient to sustain a judgment of conviction; the contention being that there was a failure to prove intent.

From Marion Criminal Court (52,068) ; *Fremont Alford,* Special Judge.

Prosecution by the State of Indiana against Walter Brock and others. From a judgment of conviction, the defendants appeal. *Affirmed.*

*Dan Brown, Jr.,* and *Ryan, Ruckelshaus & Ryan,* for appellants.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* for the state.

EWBANK, J.—The appellants, Walter Brock and Paul Maple, jointly with Joe Miller, were indicted on the charge of having feloniously combined, conspired and

confederated together for the purpose and with the intent "feloniously to take, steal and carry away, current and lawful money of the personal goods of Ralph Temperly." They were tried by the judge without a jury, were found guilty, and sentenced.

The only error assigned is the overruling of separate motions for a new trial filed by the appellants. The only errors for which each appellant asked a new trial were that the decision was not sustained by sufficient evidence and was contrary to law; and the only defect in the evidence insisted upon or even suggested by counsel for appellants is that it fails to prove the alleged intent on their part "feloniously to take, steal and carry away * * * money of the personal goods of Ralph Temperly."

Each appellant made a signed statement at the time of his arrest, both of which statements were read in evidence, without objection; and each of them testified at the trial. There was evidence which fairly tended to prove the following facts: That Maple and Brock were mechanics, and lived on different streets with their respective wives, about a mile north of the Union Station in Indianapolis; that Brock had been out of work for five weeks; that Maple hired an automobile from a garage near the court house in Indianapolis; that about five o'clock on the morning of February 19, 1921, he and appellant Brock, with their codefendant, Miller, left a hotel near the Union Station, at which all of them had rooms, and drove south in the hired automobile about a mile and a half to Palmer street, where they turned east from Meridian street into Palmer street; that Ralph Temperly left his home on Palmer street, a square and a half east of Meridian street, and walked west toward Meridian street, intending to board a street car and ride to the stock yards; that he was a speculator in live stock and had more than $900 in his possession at the time for

that purpose; that he "catches a five thirty car;" that day was breaking, so he could distinguish objects clearly; that Maple was driving the automobile, and Temperly met it in Palmer street, between his home and Meridian street and just after it ran past him the automobile was stopped, though the engine continued running; that before the automobile stopped Miller and Brock got out of it and went toward Temperly and Miller shouted, "Hands up!" that Miller had a gun, but when Temperly jumped toward him and reached for his arm he pulled the gun back and did not fire; that Temperly ran toward Brock, when "he ducked and swung back," and, getting the car between himself and them, Temperly ran up to the corner, where he had seen and spoken to a man carrying bread into a grocery; that he knocked the hat from Brock's head, and it was left in the street; that Brock then jumped into the car and said to go ahead; that Miller also got in, and Maple drove them back near the hotel, where they got out, and he then took the car to the garage and went home; that on the way back Maple said to Miller and Brock: "That was a hell of a trick to try to pull off," and they asked what he meant, but he made no answer; that, as the automobile approached Temperly, Miller said to stop—that was a man he knew; that when shown the hat by a detective Brock said that it was the hat he wore when Temperly knocked it off his head; and that when Brock and Miller got out of the automobile they struck at Temperly, but he dodged and they did not hit him.

Maple testified that when he saw the man run he thought Miller and Brock had stopped to start a fight, or that the man might have thought they were officers. Both Brock and Maple testified that they had been drinking and drove south from the hotel to get some whiskey. Brock said the others asked him to "go on a booze party

with them." Maple testified that Miller said they could get some whiskey "on the south side," and Brock testified that the object of the trip was to look for liquor. Brock testified that he thought Miller had a bottle in his hands, and intended to ask the man to get him some whiskey when they stopped, and Maple testified that he thought they only stopped to ask the man where they could get some whiskey. Both appellants testified they had been drinking for several hours, and both denied any intent to steal or take money from Temperly or anybody else, and denied all knowledge of such intent on the part of Miller. In his statement made at the time of his arrest Brock stated that as they drove away from the scene of the assault, Miller called him "yellow," cursed him, and said that he (Miller) should take the gun and blow Brock's brains out for not helping him; but he denied this on the witness stand.

Temperly testified that he had never before met either of the appellants or Miller, and there was no direct evidence that either of them knew Temperly, or knew that he was in the habit of leaving his home at that hour in the morning to go to the stockyards, or that he carried money. All three of the defendants were arrested April 16, 1921, nearly two months after the encounter with Temperly, and each then denied having attempted to "hold him up," but told the policeman that they agreed "to go out and have a time," and "all stated that they went out to get some whiskey."

It is obvious that this evidence would have justified the acquittal of appellants, if the trial court had given credit to their story. But we think the facts that a man accustomed to go from his home to the street car line at 5:30 in the morning, who carried a large sum of money because of the business in which he was engaged, was stopped between his home and the street car line, less than two squares away, by two men that alighted

from a passing automobile, one of whom had a gun and commanded him to put up his hands, and that when he "showed fight" they got back into the automobile driven by their companion, the engine of which had been kept running, and returned to the place from which they had set out together, with all the other facts proved, support the inference which the trial court drew therefrom that the three men in the automobile conspired together, with intent to take money from the man they attacked, whatever other inferences it might have supported, had the trial court drawn them. There was no available error in overruling the motion for a new trial.

The judgment is affirmed.